C. D. HEATH v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 16 October, 1929.)

1. **Railroads D g—In action to recover for negligent fire the burden is on plaintiff to show railroad caused fire and on it to show due care.**

   In order for the plaintiff to recover damages from a railroad company for setting fire to his barn off the right of way by sparks from the defendant's locomotive, the burden is on the plaintiff to show that the fire was caused by sparks from the locomotive, and then on the railroad company to show that its engine was properly equipped and operated, and upon supporting evidence the issue of negligence is for the jury, and the defendant's motion as of nonsuit is properly denied.

2. **Same—The setting afire of a barn by sparks from locomotive is some evidence of negligence of railroad.**

   Where there is evidence that plaintiff's barn off the right of way of the defendant railroad company was set afire by sparks from the defendant's

locomotive shifting nearby, it is some evidence that the locomotive emitting the sparks was in a defective condition or that it was improperly operated.

**3. Same—Evidence in this case held sufficient on issue of railroad's negligence in setting fire to property.**

Evidence that the defendant railroad company's locomotive was shifting cars near the property of the plaintiff, throwing off heavy smoke with live sparks that were carried by the wind to the plaintiff's barn, off the right of way, and that soon thereafter the barn caught fire and was destroyed, and that there was at the time no fire on the plaintiff's premises which could have started the conflagration, is sufficient to be submitted to the jury upon the defendant's actionable negligence.

**4. Same—Evidence that same locomotive emitted sparks night before fire is competent as to its defective condition.**

Where there is evidence tending to show that defendant's locomotive was throwing off heavy smoke with live sparks which caused the fire in suit, testimony that the same locomotive on the night previous was emitting smoke and live sparks is competent upon the question of the defective condition of the locomotive on the issue of defendant's negligence in this respect.

CIVIL ACTION, before *Daniels, J.,* at May Term, 1929, of CRAVEN.

Plaintiff owned a tract of land upon which was situated his dwelling, a tobacco barn and packhouse within which there were stored hay, fodder, corn and fertilizer. The packhouse is about 104 feet from the railroad track and not upon the right of way. The evidence tended to show that on 6 March, 1928, a freight train owned and operated by the defendant was traveling east and stopped for the purpose of taking water and shifting cars near plaintiff's property. The train arrived about four o'clock in the afternoon and remained from fifteen to thirty minutes. While the train was shifting the engine emitted large quantities of smoke, which was driven by a northeast wind over and across the packhouse of plaintiff.

There was further testimony from a witness for plaintiff who stated that he was driving along the county road while the train was shifting near plaintiff's property, and that the train seemed to be overloaded and that "every now and then the engine spit." Witness further stated: "The engine was throwing out hot cinders because I put my coat over my neck to keep the cinders from burning me, because it did burn my mule."

Plaintiff also offered the testimony of a witness who stated that on the day before, to wit, on 5 March, he saw the same engine of defendant, which was alleged to have set fire to plaintiff's property, emitting live sparks, and that some of these sparks fell on him and burned him on the neck. There was testimony that there had been no fire in plaintiff's home near the packhouse or any fire around the packhouse before the fire

was discovered. The train left shortly after four o'clock. There was testimony that between five and six o'clock fire was discovered on the packhouse next to the railroad track. The packhouse and its contents were destroyed according to the evidence of plaintiff, and he instituted this action for damages.

The defendant denied that its engine had emitted live sparks while shifting near plaintiff's property and offered strong proof to the effect that the engine was properly equipped with a spark arrester of the type approved and in general use, and that the engineer was thoroughly experienced and competent, and that the train was operated in a careful manner.

The jury answered the issue in favor of plaintiff and awarded damages in the sum of $1,200.

From judgment upon the verdict the defendant appealed.

*D. L. Ward and D. L. Ward, Jr., for plaintiff.*
*Moore & Dunn for defendant.*

BROGDEN, J. In cases of damage by fire, occasioned by the engine of a railroad company, there are ordinarily two questions to be determined in order to impose liability upon the defendant.

1. Did the engine set out the fire that burned the property?

2. If so, did the fire originate through the negligence of the defendant?

The principle of law governing liability for fire catching off the right of way was thus stated in *Moore v. R. R.,* 173 N. C., 311: "It is settled that if the plaintiff has introduced evidence sufficient in probative force to justify a jury in finding that the fire was caused by a spark from defendant's engine, the issue should have been submitted, the weight of the evidence being a matter for the jury. In such case the defendant is called upon to prove that its engine was properly equipped and operated. If so equipped and operated, there is no negligence or liability upon the part of defendant."

In the case at bar the trial judge, at the request of defendant, charged the jury as follows: "I charge you that under the law of North Carolina, if fire escapes from an engine in proper condition and having a proper spark arrester and operated in a careful way by a careful and competent engineer and the fire catches off the right of way, the defendant is not liable, for there is no negligence, and you should answer the first issue 'No.' "

The pertinent question standing at the threshold is whether there was sufficient evidence to be submitted to the jury upon the origin of the fire; that is to say, whether sparks from the defendant's engine set fire to

plaintiff's property. There was evidence that hot cinders were emitted from defendant's engine at the time it was shifting near plaintiff's property, burning a mule of a witness standing near the railroad, and that the witness was compelled to put his coat over his neck for protection. There was evidence that the wind was blowing toward the plaintiff's property and that large volumes of smoke were coming from the smokestack of the engine. There was further testimony that on the day before, the same engine was throwing sparks which burned the shirt and neck of a witness. There was also evidence that there was no fire about plaintiff's dwelling or packhouse during the afternoon prior to the time the packhouse was burned.

We are of the opinion that there was sufficient evidence to be submitted to the jury on the question of the origin of the fire. Therefore, the motion for nonsuit was properly overruled.

Upon the question of negligence, it has been held that if fire was caused by sparks from the engine, that of itself was some evidence of negligence either in the condition of the spark arrester or in the operation of the engine. *Reid v. R. R.,* 180 N. C., 511, 105 S. E., 169.

The defendant earnestly insists that the evidence of the witness Cruel to the effect that the engine was throwing sparks the night before the plaintiff's property was burned, was incompetent. The position of the defendant upon this point would be sound and effective if the record did not disclose that the same engine was involved. A witness for defendant testified: "The engine they claimed the barn was burned by was coming back toward New Bern; that was the same engine that went to Goldsboro the night before." Another witness for defendant testified: "Engine No. 134 that came down from this direction on the evening of the 5th of March went to Goldsboro, and the same engine came back on the afternoon of the 6th."

The prevailing rule of law with reference to this aspect of the case is thus declared in *Kerner v. R. R.,* 170 N. C., 94, 86 S. E., 998: "It is conceded that where a fatal fire has been set out from a designated or known engine, it is admissible to introduce evidence of other fires previously set out by the same engine for the purpose of showing its defective condition, but the rule has never been extended so as to permit evidence of sparks emitted by some other engine at some other time and place."

No error.